# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**KRISTOFER A. STANSEL,**

      **Plaintiff,**

**vs.**                        **Case No.: 4:15cv157-WS/CAS**

**CAPTAIN J. SIKES,**
**OFFICER ROGERS,**
**SERGEANT DOUGLAS M. SEWELL,**
**and OFFICER FLANAGAN,[1]**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Pending is Defendants' motion for summary judgment.  ECF No. 80.

The pro se Plaintiff was advised of his obligation to respond to the motion,

ECF No. 81, and his response was timely filed.  ECF No. 83.  The motion is

ready for a ruling.

---

[1] A separate Order is entered this day to correct the spelling of Defendant Flanagan's surname.  Plaintiff used this spelling (Flanagan) in the fourth amended complaint, ECF No. 49.  The incorrect spelling of Flannagin was used in the original complaint, ECF No. 1.  Defendant Flanagan has consistently used this spelling throughout this litigation and the Clerk of Court is required to correct the spelling on the docket.

**Plaintiff's Allegations, ECF No. 49**

Plaintiff brought this case pursuant to 42 U.S.C. § 1983, alleging that Defendant Sewell used unnecessary force when he sprayed Plaintiff with chemical agents on June 23, 2013.  Plaintiff alleges that Defendant Sikes authorized the use of force, and Defendant Flanagan filmed the use of force, knowing that Plaintiff was not being disruptive.  ECF No. 49.  Plaintiff also alleges that Defendant Rogers took no action to protect him from the unjustified use of force.  ECF No. 49.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must then show[2] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case."  Id. at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury).  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).  All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct. at 2578 (noting the distinction "between evidence of disputed facts and

disputed matters of professional judgment."),[3] but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

**Relevant Rule 56(e) Evidence**

On June 23, 2013, Plaintiff was housed in the Y-dormitory at Liberty Correctional Institution, which is a secure housing and confinement unit. ECF No. 80, Ex. A at 1 (ECF No. 80-1, Rogers Aff.).  Defendant Rogers was a correctional officer who worked as the Y-dormitory housing unit officer on June 23, 2013.  ECF No. 80-1 at 1.  At approximately 8:30 a.m., Defendant Rogers observed Plaintiff "yelling from his cell."  *Id.* at 2.  He "attempted to counsel with" Plaintiff, but Plaintiff responded by cursing at Defendant Rogers.  *Id.*  Defendant Rogers ordered Plaintiff to stop, but

---

[3] Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

Plaintiff would not comply.  *Id.*  Defendant Rogers notified Defendant

Sewell of the situation and left to attend to his other duties.  *Id.*

Defendant Sewell was assigned as the Y-dormitory housing unit

sergeant at Liberty C.I., a supervisory position.  ECF No. 80, Ex. B at 1

(ECF No. 80-2, Sewell Aff.).  Defendant Sewell declares that after

Defendant Rogers reported Plaintiff's behavior to him, he went to Plaintiff's

cell at approximately 8:40 a.m. "and attempted to counsel with [Plaintiff] in

an attempt to calm him down."  *Id.* at 2.  Plaintiff, however, "continued

yelling down the wing and yelling obscenities, trying to get the attention of

other inmates."  *Id.*  After unsuccessfully ordering Plaintiff to stop his

disruptive behavior several times, Defendant Sewell "notified the shift

supervisor, Captain James Sikes," of Plaintiff's behavior.  *Id.*

Defendant Sikes arrived in the Y-dormitory at approximately 8:50

a.m., and observed Plaintiff "cursing staff and yelling."  ECF No. 80, Ex. C

at 1 (ECF No. 80-3, Sikes Aff.).  Defendant Sikes also ordered Plaintiff to

stop his behavior, but he did not comply.  *Id.*  Pursuant to the procedures

listed in Florida Administrative Code Rule 33-602.210, Defendant Sikes

verified from medical staff that Plaintiff "did not have a medical condition

that would be exacerbated by the use of chemical agents."  *Id.* at 2.

Defendant Sikes also contacted the Duty Warden to discuss Plaintiff's

behavior and receive authorization "to use Oleoresin Capsicum ("OC [Spray]"). *Id.* Defendant Sikes "had Officer Heath Flanagan initiate [a] hand-held camera" to record the use of force. *Id.*

The camera recording includes introductory statements of the events by Defendants Rodgers, Sewell, and Sikes. ECF No. 80-3 at 2; *see also* ECF No. 80, Ex. E.[4] Defendant Sikes, accompanied by Defendant Flanagan, proceeded to Plaintiff's cell and issued a "final order and warning" that chemical agents would be administered if he did not cease his behavior. ECF No. 80-3 at 2. Plaintiff was "not acting disorderly or disruptive at that time," so the video recording was "halted at about 9:20 am." *Id.*

At approximately 9:45 a.m., Defendant Rogers again observed Plaintiff "yelling and cursing staff," and being disruptive. ECF No. 80-1 at 2. Again, Defendant Rogers unsuccessfully attempted to counsel with Plaintiff. *Id.*

Defendant Sikes was advised at approximately 10:00 a.m. that Plaintiff had resumed his disruptive behavior. ECF No. 80-3 at 2. Defendant Sikes retrieved a canister of OC and directed Defendant Sewell to administer three one-second bursts" of the chemical agents. *Id.*

---

[4] The video was filed under seal. ECF Nos. 75, 76.

Because Plaintiff continued his behavior, a second application of OC was administered approximately fifteen minutes later.  *Id.*  Plaintiff complied with orders to cease at about 10:30 a.m.  *Id.*

Defendant Sikes declares that the "only reason chemical agents were used was to quell [Plaintiff's] disruptive behavior."  ECF No. 80-3 at 3.  "Only the minimum amount of force was used to gain control of Plaintiff's in-cell disturbance to calm him down."  *Id.*  Such conduct can "potentially escalate from one inmate to countless inmates housed in the dormitory, so disruptive behavior cannot be allowed to continue."  *Id.*  Defendant Sikes declares that Plaintiff's allegations as presented in the complaint "are absolutely untrue."  *Id.* at 1.

Defendant Flanagan also states in his declaration that Plaintiff's allegations against him "are absolutely untrue."  ECF No. 80, Ex. D (ECF No. 80-4, Flanagan Aff.).  Defendant Flanagan advises that he recorded the "lead-in statement" and "final order" for Plaintiff to stop his behavior.  *Id.* at 1.  Plaintiff complied and the "recording was halted."  Defendant Flanagan then "left the area, and was not present at or near [Plaintiff's] cell when other staff were involved in" administering chemical agents against Plaintiff.  *Id.* at 2.

Defendant Flanagan returned at approximately 10:30 a.m. and "resumed recording events" which was after the "chemical agents had been used." *Id.* Defendant Flanagan states that he recorded Plaintiff's removal "from his cell, the decontamination shower, the medical exam from a distance through a window to ensure [Plaintiff's] medical privacy," and Plaintiff's escort to another cell. *Id.;* see also ECF No. 80-3 at 2.

At his deposition, Plaintiff testified that Defendant Flanagan was not present when he was sprayed, and was only present when holding the camera for the video recording. ECF No. 80, Ex. F (ECF No. 80-5 at 9). He also acknowledged that he did not see Defendant Rogers during the use of force either. *Id.* at 6-7. Plaintiff said that the chemical agents were "applied by Sewell and supervised by Sikes." *Id.* at 5.

Plaintiff said that he was not being disruptive that day and was "not causing a disturbance." *Id.* at 10. Plaintiff said he "was being peaceful and compliant." *Id.* Plaintiff surmises that Defendant Flanagan must have known he was not being disruptive, but acknowledged that he did not have any personal knowledge of what Defendant Flanagan knew. *Id.* at 12. Plaintiff also said that Defendant Rogers was making rounds that day and "observed that [Plaintiff] was not being disruptive." *Id.* at 7. He maintained that he "wasn't being disruptive at all when" those officers were "present or

not." *Id.* at 10.  Plaintiff also affirmed that sometimes inmates are being disruptive when a use of force is filmed ("the camera was rolling"), but there are times when inmates are not being disruptive at the time chemical agents are used.  *Id.* at 10.  Furthermore, Plaintiff said that prior to the use of force, he was told to stop his "disruptive behavior or chemical agents" would be used, but nobody specifically told him "what [he was] being accused of, that [he was] yelling down the wing, that [he was] kicking on the door," or "anything like that."  *Id.* at 13.

Dr. Albert Carl Maier provided a declaration to explain Plaintiff's medical records.  ECF No. 80, Ex. G (ECF No. 80-6, Maier Aff.).  Dr. Maier states that chemical agents produce "ocular and skin irritation and respiratory distress."  ECF No. 80-6 at 2.  Plaintiff was taken to medical for an "assessment" but he denied any physical injuries.  *Id.*  However, three days later, on June 26, 2013, "he alleged that he received a black eye while being sprayed, and was assessed with a black eye with mild swelling and a small scratch below his left eye."  *Id.*

Chemical agents cause eye irritation and tearing as well as a burning sensation of the exposed skin.  *Id.*  Those "effects are transient and not permanent, and their duration may be reduced with post exposure irrigation/washing/showering and change of clothing."  *Id.*  "The effects may

linger for several days after exposure even with prompt decontamination." *Id.*

Plaintiff had received an optometric assessment in early April 2013, prior to the use of chemical agents revealing myopia and astigmatism. *Id. at 2.* Additional optometric assessments on August 6, 2013, and on October 2, 2013, "revealed no acute pathology residual from chemical agents exposure, but did confirm his preexisting pre-exposure myopia and astigmatism ([Att. 1], pp. 52-55), which would be responsible for his complaints of impaired vision." *Id.* Plaintiff also complained "of difficulty swallowing on June 25, 2013, but was assessed with a sore [throat]." *Id.* Additionally, Plaintiff complained of shortness of breath and chest pain; he received an electrocardiogram (EKG) on June 25, 2013, which was "normal." *Id.* Plaintiff's lungs "were clear," and there were "no signs or symptoms of respiratory distress;" Plaintiff had a "regular heart rate, and [he was] assessed only with a possible pulled muscle." *Id.* Additional tests were performed due to his complaints, but all results were "completely normal." *Id.* at 3. Furthermore, Plaintiff "never complained of any post traumatic stress disorder (PTSD), and was not assessed with any stigmata of PTSD." *Id.*

Attached to Dr. Maier's declaration are copies of Plaintiff's medical records.  ECF No. 80, Ex. G (ECF No. 80-6).  Included in those records is the Emergency Room Record following the use of force.  ECF No. 80-6 at 44.  The examination summary shows that Plaintiff complained that his eyes were burning and he requested they be "washed."  *Id.*  He "denie[d] any physical injuries" and, moreover, made no report of any "physical injuries."  *Id.* at 44-45.

For his part, Plaintiff provided a one paragraph declaration in opposition to summary judgment.  ECF No. 83, Ex. B.  In full, it states:

> My name's Kristofer Stansel and I was incarcerated at Liberty C.I. on 6-23-13 when force was used against me maliciously and sadistically by the defendant Sewell and the other three defendants were deliberately indifferent to the excessive use of force.  I did not disobey any orders given to me by the defendants, display disruptive behavior, or do anything else to deserve the use of force against me on 6-23-13.

ECF No. 83 at 13 (Plaintiff's Ex. B).

Finally, the hand-held video recording was provided as evidence in support of Defendants' motion.  ECF No. 80, Ex. E.[5]  The video has been reviewed and is essentially a two-part video.  The first part of the video shows a "lead-in" by Defendant Sikes.  Defendant Flanagan's voice is heard identifying himself as the camera operator.  Additionally, Defendants

---

[5] The video was filed under seal.  ECF Nos. 75, 76.

Rogers and Sewell provide a "lead-in" stating their actions in attempting to have Plaintiff cease his disturbance.  Defendant Sikes and Flanagan walk to Plaintiff's cell and Plaintiff is directed to come to the cell door.  Plaintiff gets off his top bunk and walks to the door.  A statement is read advising Plaintiff to cease his behavior, and then Plaintiff is directed to turn around, cuff up, and stand at the back of his cell.  Plaintiff's cell mate is directed to do the same, and after being handcuffed, the cell mate is led out of the cell.  This part of the video concludes with a statement from Defendant Sikes that no chemical agents were used because Plaintiff had complied.

The video resumes at 10:28 a.m. and part two of the video takes place after Plaintiff has been sprayed with chemical agents.[6]  Plaintiff is led from his cell to take a shower, then escorted to medical for evaluation and to have his eyes flushed, and then he is placed in another cell.  Throughout this portion of the video, Plaintiff repeatedly says that he is "sorry" and apologizes to Defendant Sikes numerous times.  He specifically apologizes "to the officer [he] cussed at" and said he was "sorry for acting like a

---

[6] "Pursuant to FLA. ADMIN. CODE R. 33-602.210(5)(b)2., if, during the same shift, an inmate ceases the conduct creating the disturbance while the supervisor, camera and camera operator are present, but resumes such conduct after the supervisor, camera and camera operator have left the area, videotaping of the actual application of chemical agents is not required (see Glisson Decl., Ex. 1)."  Watson v. Edelen, 76 F. Supp. 3d 1332, 1351 (N.D. Fla. 2015).

jackass."  Plaintiff states several times that he would give them "no more problems."  *Id.*

## Analysis

Defendants first argue that Plaintiff is not entitled to compensatory or punitive damages without a showing of physical injury.  ECF No. 80 at 10-17.  They contend that Plaintiff suffered only a de minimis injury which is insufficient to sustain a request for monetary damages.  *Id.* at 12.

Plaintiff came forward with no evidence pertaining to his injuries.  The only evidence submitted concerning physical injuries was submitted by Defendants.  That evidence demonstrated that Plaintiff's injuries were temporary and minimal.  The video evidence, in particular, demonstrates that Plaintiff was uncomfortable and in distress; but there is no evidence that he requested any medical care beyond having his eyes flushed.

The Prisoner Litigation Reform Act severely limits a prisoner's right to monetary relief, precluding a prisoner from bringing "a federal civil action 'for mental or emotional injury suffered while in custody without a prior showing of physical injury.'"  <u>Smith v. Allen</u>, 502 F.3d 1255, 1271 (11th Cir. 2007) (quoting 42 U.S.C. § 1997e(e)),[7] abrogated on other grounds by

---

[7] The statute provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of

Sossamon v. Texas, 131 S.Ct. 1651 (2011); see also Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2002). It is well established that compensatory and punitive damages are precluded in the absence of a physical injury, but "nominal damages may still be recoverable." Al-Amin v. Smith, 637 F.3d 1192, 1198 (11th Cir. 2011). Moreover, this Court has previously concluded that injuries such as pain from burning eyes and skin, temporary blindness, and difficulty breathing is insufficient to avoid the § 1997e(e) bar. Magwood v. Tucker, No. 3:12cv140-RV/CJK, 2012 WL 5944686, at *5 (N.D. Fla. Nov. 14, 2012); Robinson v. Tifft, No. 3:11cv560-LAC/CJK, 2012 WL 2675467, at *2 (N.D. Fla. June 1, 2012); Kornagay v. Burt, No. 3:09cv281-LAC/EMT, 2011 WL 839496 (N.D. Fla. Feb. 8, 2011); and Beecher v. Jones, No. 3:08cv416-MCR/EMT, 2010 WL 5058555, at *5–6 (N.D. Fla. Oct. 29, 2010). Here, the evidence reveals Plaintiff experienced only minimal discomfort; that is insufficient to show "physical injury." Plaintiff's complaint must be limited to nominal damages only as he suffered only a de minimis physical injury.

Defendants also assert that the use of force against Plaintiff was "proper" and necessary "to quell the Plaintiff's persistently disruptive behavior." ECF No. 80 at 17. Defendants seek summary judgment in their

a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e).

favor on the basis that "the use of chemical agents was appropriate and not excessive." *Id.* at 22.  Plaintiff, on the other hand, maintains that he was not disruptive and did not disobey order such that the use of force was deserved.  ECF No. 83, Ex. B.

The Eighth Amendment forbids cruel and unusual punishment. Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003).  A claim that prison officials unnecessarily used excessive physical force on a prisoner falls within the Cruel and Unusual Punishments Clause.  The core judicial inquiry for this claim is the standard set forth in Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986): "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."  Hudson v. McMillian, 503 U.S. 1, 6, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) (quoting Whitley, at 320-21, 106 S.Ct. at 1085).  Analysis of an excessive force claim considers "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  Hudson, 503 U.S. at 7; *see also* Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996).

An "absence of serious injury" must also be considered, but "[t]he absence of serious injury does not necessarily preclude a claim under the Eighth Amendment . . . ." Stallworth v. Tyson, 578 F. App'x 948, 953 (11th Cir. 2014). The Supreme Court has held that the Eighth Amendment's "prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Wilkins v. Gaddy, 559 U.S. 34, 37–38, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (quoted in Stallworth, 578 F. App'x at 953). Thus, the Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim." Wilkins, 559 U.S. at 37, 130 S. Ct. at 1178. The "core judicial inquiry," is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" 559 U.S. at 37, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 7, 112 S. Ct. at 999). "'When prison officials maliciously and sadistically use force to cause harm,' the Court recognized, 'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman,

inflicting less than some arbitrary quantity of injury.'" Hudson, 503 U.S. at

9, 112 S.Ct. 995 (quoted in Wilkins, 559 U.S. at 37, 130 S. Ct. at 1178);

*see also* Stallworth, 578 F. App'x at 953 (stating "the focus of the Eighth

Amendment inquiry is on the nature of the force applied, rather than the

extent of injury inflicted."). Thus, "[t]he Eighth Amendment's prohibition of

'cruel and unusual' punishments necessarily excludes from constitutional

recognition de minimis uses of physical force, provided that the use of force

is not of a sort 'repugnant to the conscience of mankind.'" Whitley, 475

U.S. at 327, 106 S.Ct. at 1088 (quoting Estelle v. Gamble, 429 U.S. 97,

106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)) (quoted in Hudson, 503

U.S. at 9-10, 112 S. Ct. at 1000)).

Here, there are conflicting affidavits on the issue of whether Plaintiff

was creating a disturbance which justified the use of chemical agents.

There is a genuine dispute of material fact between the parties as to

whether the force used against Plaintiff was to restore discipline or cause

malicious harm.  Viewing the evidence in the light most favorable to

Plaintiff, he was not yelling and cussing at officers, and had not refused

orders to cease creating a disturbance.  Under those facts, the use of

force, even if it did not cause serious injury, would violate the Eighth

Amendment as it "would be 'repugnant to the conscience of mankind.'"

Stallworth, 578 F. App'x at 954; Hudson, 503 U.S. at 9-10, 112 S. Ct. at

1000.

Notwithstanding this dispute as to whether the use of force was

necessary, Plaintiff brought claims against four Defendants.  However,

Plaintiff did not come forward with any evidence to support his claims

against two of those Defendants.  Plaintiff alleged that Defendants

Flanagan nor Rogers failed to protect him from a malicious use of force.

ECF No. 49 at 7.  However, Plaintiff testified that neither Defendants

Flanagan nor Rogers were present when he was sprayed with chemical

agents.  There is, accordingly, no evidence that either of those Defendants

had the opportunity to intervene and failed to do so.  *See* Hadley v.

Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008) (explaining "that the

non-intervening officer was in a position to intervene yet failed to do so.")

(citing Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir.

2000)).  The only evidence presented as to involvement in the use of

chemical agents against Plaintiff was that they were "applied by Sewell and

supervised by Sikes."  *Id.* at 5.  Plaintiff's declaration is sufficient to provide

evidence that he was not disobeying orders and acting disruptively, but it

does not demonstrate involvement by Defendants Flanagan or Rogers.

Thus, summary judgment should be granted in favor of Defendants Flanagan and Rogers.

The remaining Defendants point to Plaintiff's statements in the video recording as evidence that the use of chemical agents was not malicious or unwarranted. Rather, Defendants contend that Plaintiff's repeated apologies demonstrate that he was being disruptive and non-compliant. ECF No. 80 at 23. Plaintiff, on the other hand, argues that those comments were made "because he was in pain and fear for his safety . . . ." ECF No. 83 at 2. He contends that accepting those comments as proof that he was being disruptive is akin to "admitting a 'confession' [that was] given during torture . . . ." *Id.*

Both parties acknowledge that the video evidence does not show Plaintiff creating a disturbance at any time. The parties have only *argued* as to the meaning of Plaintiff's statements and apologies in the video. Argument is not evidence. Such argument should be presented to the finder of fact at trial to resolve this claim.

**Qualified Immunity**

"Qualified immunity shields government officials sued in their individual capacities from liability against a plaintiff's § 1983 claims if the officials' conduct did not 'violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'"

Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoted in

McNeeley v. Wilson, 649 F. App'x 717, 720–21 (11th Cir. 2016)).  If a

"public official proves 'that he was acting within the scope of his

discretionary authority when the allegedly wrongful acts occurred,'" Grider,

618 F.3d at 1254, n.19 (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th

Cir. 2002)), the next step is to determine: (1) "whether the plaintiff's

allegations, if true, establish a constitutional violation"; and (2) "whether the

right violated was 'clearly established.'"  Grider, 618 F.3d at 1254 (quoted

in McNeeley, 649 F. App'x at 721).  "That right may be established by

'specific statutory or constitutional provisions; principles of law enunciated

in relevant decisions; and factually similar cases already decided by state

and federal courts in the relevant jurisdiction.'"  Goebert v. Lee Cty., 510

F.3d 1312, 1330 (11th Cir. 2007) (quoted in McNeeley, 649 F. App'x at

721).

    "As a 'threshold question,' a court must ask, '[t]aken in the light most

favorable to the party asserting the injury, do the facts alleged show the

officer's conduct violated a constitutional right?'"  Saucier v. Katz, 533 U.S.

194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) (quoted in Lee v.

Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).  "If a constitutional right

would have been violated under the plaintiff's version of the facts, the court

must then determine 'whether the right was clearly established.'" Lee, 284

F.3d at 1194 (quoting Saucier).  Here, Defendants have not viewed the

facts from Plaintiff's perspective, *see* ECF No. 80 at 25, but the Court has.

"[I]nmate discipline and control is a primary job responsibility for"

prison and jail officials and such actions are "well within the scope of their

discretionary authority."  McNeeley, 649 F. App'x at 721.  Second,

accepting Plaintiff's evidence as true, he has established a constitutional

violation - using chemical agents on an inmate when there was no need to

do so violates the Eighth Amendment.  Third, the law was clearly

established prior to this incident that using chemical agents solely to inflict

pain and not to restore order was unlawful.  Wilkins, 559 U.S. 34, 40, 130

S. Ct. 1175, 1180, 175 L. Ed. 2d 995 (2010) (finding that assault by

correctional officer which is "carried out 'maliciously and sadistically' rather

than as part of 'a good-faith effort to maintain or restore discipline'" states

an Eighth Amendment claim); see also Whitley, 475 U.S. at 320-21, 327,

106 S.Ct. 1078 (finding that Eighth Amendment question turns on "whether

force was applied in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm.");

Hudson, 503 U.S. at 6-7, 112 S.Ct. at 999 (same); Rhodes v. Chapman,

452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (finding that "[a]mong 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'").  "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.'" Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting Whitley v. Albers)). All of these cases provided ample notice prior to June 2013 that using force on an inmate when there was no need to maintain or restore discipline is unconstitutional.  Summary judgment should be denied as to this argument because Defendants are not entitled to qualified immunity.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that the motion for summary judgment, ECF No. 80, be **GRANTED** as to Plaintiff's claims against Defendants Flanagan and Rogers, but otherwise be **DENIED** as to the Eighth Amendment claims against Defendants Sikes and Sewell.  The motion should also be **GRANTED** as to Plaintiff's request for compensatory and punitive damages as those claims are barred by 42 U.S.C. § 1997e(e).

Finally, it is **RECOMMENDED** that this case be **REMANDED** to the undersigned for further proceedings prior to setting this case trial.

**IN CHAMBERS** at Tallahassee, Florida, on February 23, 2018.


  S/      Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


### <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**